Good morning, Your Honors, and may it please the Court, Nathan Franzen on behalf of Appellant. In this matter, it's an interesting case. Fund contested that the Appellant rescinded his loan. He notified the lender within his three-day right of rescission. The lender received it. After receiving it, three days, in fact, the lender funded a loan that had been void, canceled. This Ninth Circuit Court described the borrower's right in the CMAR case as a three-day right as a buyer's remorse clause. It's described in numerous other cases as an unconditional right. This right is absolute. The borrower can cancel for any reason or no reason at all. But the district court chose to apply the standard and terms and requirements of an extended right to rescind. That is one that has not been determined yet. The rights are subject. Well, I think that the reason the court did that is because it seems as though the logical outcome is that Kazi effectively gets a free house, right, if he doesn't tender? Your Honor, that's a relevant concern, I think, in many cases like this, and nobody wants to borrow a free house. They don't want to create a situation where there's a windfall. I mean, even if we accept your ñ what, as a practical matter, is the outcome if we accept your three-day unconditional cooling-off rescission? There are two possibilities, Your Honor. And one would be that if the security interest is void, as it was per the statute, the lender then can ñ or the court, rather, can look at this as equivalent of a bank putting $300,000 in my account. I don't get to keep the money necessarily, but the bank doesn't have a security interest in my home. So there may be a claim that the bank may have as to the borrower for money that was given not pursuant to the contract, because the contract had been voided pursuant to law. So there may be a claim, an affirmative claim. So there's a claim that it's definitely ñ it's probably not collectible or reimbursable. Well, there's another alternative, Your Honor. I think it's ñ it may be harsh, but it's relevant. The statute provides this, that when a borrower makes an attempt to tender, as Mr. Kazi did, which may be a factual dispute, by the way, which would require a trial, which didn't happen in this case. But there may be a factual determination as to his willingness to tender. The statute says if the lender doesn't accept that offer, they waive that right. And that may be harsh, but it's there for a reason. And I think in this case we see this very explicitly, in that the scenario would be if a borrower chooses to rescind within three days, the lender could say, we just ñ we're not going to accept it. We're just going to ignore it and fund the loan anyways. And the borrower would then have no recourse, because they're not going to be able to convince their prior lender to unwind a transaction. And they're unlikely able to write a check for a tender amount. And they're unable to refinance because of seasoning requirements. So literally this three-day absolute right would be of no consequence or right at all. But I would direct the court to the Yamamoto decision, because I think it's really the threshold case. And it really sort of sums this up, and I think in an appropriate way, when it looks at the facts and says, it's true we cannot modify the rescission provision, specifically Regulation Z226.23d1, that is the voiding the security interest. We can't modify that. We can only modify the procedures, which are d2 and d3. But the Yamamoto court says ñ it begs the question, when does rescission happen? And in Yamamoto it said, we don't know there's been a rescission effectively, so we're permitted to condition our decision upon subsequent actions. This isn't that case. In fact, the court has no ability to make any determination about whether or not a rescission occurred, because as a matter of law and a matter of agreement between the parties, the rescission was complete. In other words, there's nothing to contest. Your Honor, in a sense there's no controversy. Because of the absolute right. That still doesn't deal with the windfall issue. You're saying that contemplated by the statute. I think it is, Your Honor. And it works the other way as well. Because now what we're saying is that there's effectively a windfall to the bank. And we don't usually think of banks getting windfalls like this. But in this instance, the borrower would now be straddled with a loan that he legitimately canceled. Yeah. I do find it troubling in the last case as well as this case that the notice was given and the bank, if it had paid attention to the notice, did not, the bank did not have to fund that loan. It could have just held on to the money. Because the loan wasn't funded until after the three-day notice was given. In fact, until after it was received by the bank. And it's in the record. But the reason for that, Your Honor, what the bank concluded was, and it was an error of law, they concluded that they had to receive the notice within three days, not that it was made within three days. So isn't that the answer to the windfall, that this is not a windfall that your client's making? The bank is the one who's responsible for this because it ignored the three-day notice. Correct, Your Honor. Any peril they feel is a result of their own doing. Because the client... They didn't have to refund after receiving, they didn't have to fund the loan after receiving them. In fact, they should not have. They should not have. But since they did, they may have rights. Again, money had an account or common accounts. I mean, there may be remedies they could have instituted. But it's not my client's burden to say, I don't want to lien on my client. Okay, so they may have made a $400,000 boo-boo. Let's face it. They should have acknowledged your decision not to fund the loan until the three days passed, like most people do. Yeah, Your Honor, it sounds like an expensive boo-boo. But it certainly was an error. Okay, but now what we should then do, if we agree with you, is send this back and tell Judge Winn to order the bank to release its lien and order your guy to pay back the money. Your Honor, I think the initial, and really subject to the appeal, is if it's remanded and the instructions are that the rescission was complete. That would be the extent of the remand instructions. Then the court can determine, we did put, by the way, in the brief, to hold the record, our evidence as to how Mr. Causey did make efforts to tender. Arguably, though, that may be a decision for a later date, meaning there may be a trial need to take place on, did Causey sufficiently make an effort to tender? Because we provided authority that states if a borrower makes efforts to tender and they're rejected, he's relieved of that obligation. Whether or not we get to that point may be beyond the scope of this appeal. It's not really before us. Your Honor, it was framed as an issue, but I understand that the Court's point, and I think that more appropriate analysis is it's a factual determination. We had a summary judgment motion. So what would you have our order end up by saying, Judge Winn's reversed, remand for further proceedings and leave it vague like that, or what? Your Honor, with instructions that the loan was properly rescinded, and now the Court can determine the rights of the parties with respect to the monies that was paid to Causey. That is, was a tender completed? I think that would be the appropriate remedy. Counsel, does there need to be a direction that the lien is released so that the property is free and clear? Yes, Your Honor. I think it's very important that the lien is released. One reason is that, according to statute, there is no lien. There never should have been one by operation of law. So we're really set on that. But also, yes, Your Honor, it needs to be free and clear because that's the rights of the parties. Again, the money issue can be separate, but the lien itself was never agreed to. Effectively, it was a contract that was void, not voidable, but void as a matter of law. It was a closed transaction the minute the rescission was provided. In this instance, it's not like an extended rescission case. But that should be the end of what we do, I think. I would just release the lien must be released, period. I'm a little concerned about the we have two cases right now where the banks just ignored rescission notices. I have a couple more cases like that on the March calendar. I'm just wondering to what extent is this something that's happening due to the aftereffects of 2008, that lenders are just proceeding and not complying with CILA? You know, they have low-level employees who don't know the law handling these things. And I think the banks need to learn a few lessons. Your Honor, I'm on your side on that. You don't disagree with me? Not at all. I concur with that opinion. So the cases are, in a way, legally simple and clear for us, but they're a terrible mess for both the borrower and the lender. Your Honor, and I respect, I've been doing this area of law for quite some time. TILA's an area of practicing for a while. And so I understand the challenges banks face, particularly with these extended right of rescission cases, because the determinations need to be made. This is a case, frankly, I've never seen. And I would suggest to the Court, you won't see many cases like this, because most lenders would get a notice and say, okay, we're done. And if they wanted to sell a new loan to the guy, they could go back and sell a new loan. This instance is rare and unique. But nonetheless, it's expressly determined by statute. It's determined by Regulation Z. And the line of cases support this reasoning. Again, I want to just pin this down. We agree with you. We should say objection voted to first. The decision was effective. Remand for further proceedings to determine the rights of the parties with respect to what? I think we also have to say the security interest is void. Yes, Your Honor, the security interest is void, and the rights of the parties with respect to the delivery of funds from the bank to QASI. Again, those issues may be needing to be resolved at a trial on those issues. Well, at least in theory, the bank could ask for some orders to get paid back, and then you could? They could, and, Your Honor, as the Court's aware, there's even post-judgment rights. They may have an attachment right. So it may sound academic, and I certainly hope it's not, but it's important just, I think, in this case and with Kila, to just follow the law. I think it makes sense, and it's evolving, of course. But in this instance, I think it's well settled. Okay. I'd like to just reserve the balance of my time. Thank you very much, Mr. Grayson. Good morning, Your Honors. Good morning. Please, the Court. My name is LaShawn Harris, and I represent the Defendant Apoli, U.S. Bank, National Association, Trustee for Lehman Brothers Structured Asset Investment Loan Trust, sale 2006-BNC3. Wait, is this the complete line? That's the complete, yes, that's the complete name. Okay. I'd like to apologize in advance for my raspy voice and my cough drop. I'm getting over a cold, so I may intermittently cough here and there. Your Honors, this case really boils down to whether the district court actually had the authority to condition rescission on appellate's ability to tender. There wasn't any dispute with respect to the notice of rescission and when it was received and the fact that the funds were actually, or that the loan funded after the funds were received. But what the district court did conclude said, hey, well, given all of those factors, I still have the authority to condition rescission on Causey's ability to tender. And what the record shows is that at the time, in or around November of 2006, Causey did not have the ability to tender then, and he also admits that he does not have the ability to tender now. So did what the district court do wrong was to import all of those extended rescission procedures into the three-day cooling-off rescission? Because the three-day cooling-off rescission doesn't have all those additional procedures and processes about, you know, the B and C and Regulation Z. So the D, that she could have authority to modify something, she didn't have authority to modify anything because the rescission wasn't for the 20-day extended rescission. It was just for the three-day unconditional rescission. Well, actually, I don't think the district court did error. If you read the statute itself, particularly Regulation Z that implements Section 1635 subsection B, it delineates certain subsections as far as the effects of rescission. And number one is when a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void. Now, it doesn't say when a consumer rescinds the transaction within three days, and it doesn't say that when the consumer rescinds the transaction within three years. It just draws a line, point blank, when the consumer rescinds the transaction, this is what happens. And then what follows are the procedures set forth in two and three. And lastly, the statute recognizes that the procedures that are outlined in two and three, which effectively affect the timing at which tender is affected and the lien is released, that those procedures can be modified by the court, and they can be modified by the court under appropriate circumstances. So given that reading of the clear reading of the statute, the court had the discretion to say even in a three-day rescission situation, now that I'm dealing with this case and this case is in front of me, and there are certain issues, we recognize the fact that plaintiff served his notice of rescission. There's still the issue of tender, and there's still the issue of releasing the lien. And what the court did was well within her discretion to modify the timing at which those things happen. And she did that particularly because on the record, there was really no showing that Causey had the ability to currently tender or could have tendered previously back in November of 2006. Well, if that's the case, then if he can't pay the money back, then he's stuck buying the house. Is that right? Well, if he will hold it right, then the loan would be reinstated on their initial terms. Excuse me. Pardon me for a second. We're getting some feedback, I think, from Judge Fletcher. Sorry. We're getting some. Sorry, Your Honor. No, we're getting, I think there's some extraneous noise coming from the. We're very quiet here. We will see what we can do with that. Mr. Brown, if you could see what that's going on. I'm sorry, Ms. Harris. What were you saying? I said the problem is, if we agree with you, he's forced to buy this house, even though he did everything right to try to cancel the deal within his time. Well, I would agree with the court in part. Now, with respect to the notice of rescission, there are some additional interesting facts in the record. The originating lender here was Home Lending. It wasn't either BNC or U.S. Bank who was eventually to ask the need. But what happened was subsequent to the receipt of the notice of rescission, within this three-day period, I believe they received it the fourth day, a deal was apparently struck between CAUSE and Home Lending that, hey, I'll agree to go ahead and let you fund this loan, and you guys will pay me $5,000, so they went ahead and fund the loan. Now, is that in the record, counsel? It is. It is in the record. In what way is it in the record? It should be in our supplemental excerpts. It would be in a request for judicial notice, and it would also be in our statement of facts. I can pinpoint the pages for you if you want me to take a moment to look at it. Well, I'm just wondering in what form it's in the record, but we can look at that. Okay. So that was kind of unique to that transaction itself. Then the loan gets transferred to BNC, who takes the loan without knowledge of this notice of rescission, purportedly because, you know, Home Lending thinks that everything is okidori and that there's an agreement that, you know, CAUSEE still wants to proceed with the transaction, notwithstanding the fact that it had been rescinded. So I guess none of this would have happened if the first bank had just recognized the 3-day right to rescind and not funded the loan. That's correct, yeah. But unfortunately, that's not what actually happened here. So because all of this other stuff happened, I don't see how that negates his unconditional right to rescind in the first 3 days or requires all of the other procedures. Well, that's not the point I'm making, that it negates the rescission, but it just provides additional factors that, you know, a court's sitting in equity when they're looking at all of the facts to say whose fault is this and would it be equitable for the lender to sussume this loss or would it be equitable for plaintiffs or can we come to some, you know, sort of medium that when you're looking at this as a whole, that all of those factors play in together. But under the statute, aren't we supposed to decide when he exercised the right to rescind within 3 days? So the security interest was void as of that date. The bank can't then go create the security interest. We are somehow losing you folks' voice. We're not hearing. Something's going wrong. Can you hear me, Judge Fletcher? I can hear you. Okay. Ms. Harris, if you'd continue, see if Judge Fletcher can hear you. Could you say hello to Judge Fletcher for a second? Can you talk into your mic, say hi to Judge Fletcher for a minute? Hello, Judge Fletcher. Is that better? Yes, if you're right up against it, I'm hearing you. Okay. I'll scoot over. Actually, your voice has gone down, too. Okay, I now hear you all right again. I don't know what went out. And I'll speak right over this. Okay, back to business. He's working on it. Okay, back to you. Okay. I'm not sure where we left off last, but I believe it may have dealt with the subsections 2 and 3 with respect to reordering the procedures, the temporal procedures for our decision. Mike, I guess I'm trying to get my hands over this, but what I'm trying to figure out is he rescinded within the 3 days. Within those 3 days when he rescinded, there is no security interest, and there's also nothing for him to tender because you haven't funded. So I don't see how all of the ñ I mean, if you honor the right to rescind within those 3 days and you look back in time, he didn't have anything to tender. Right, but the point is that now we are dealing with a situation where the loan has funded. And I actually did quite a lot of research in this area because it is a pretty unique question, as appellate counsel had mentioned earlier. And I did run across just one case in the Seventh Circuit that specifically dealt with conditional rescission when there was a premature funding of the loan. And in that particular ñ Could you cite that case to us? Sure. I mean, did you ñ you haven't given us this case? Yeah, it's in my brief. Oh, okay. All right, which case is it? It's AFS Financial Inc. v. Headley Lane Burdette. It's a 2000 case in the Northern District of Illinois, their Eastern Division. And in that particular case, the mortgagee moved for a summary judgment on a claim to recover an amount of mortgage loan as a condition of rescission prior to relinquishing its security interest. The court did recognize that although the loan prematurely funded, that it's pretty well settled that the court, in the exercise of its equitable discretion, can modify those rescission procedures subsequent thereto. Right, but that's a premature funding. This isn't a bank made an oops and funded when it shouldn't have. Right. And I understand that there's a little catch with that, but this case actually, you know, says that in the instance of the premature funding, even ñ okay, well, let me go back to the facts of the case here. The facts of this case pretty much plaintiff had submitted their notice of right to cancel. The bank didn't get it until after, and then the loan funded. So those facts are kind of similar to the facts that we have here. Previously, it's my understanding, although I don't represent home lending, that home lending had asserted that they did not timely receive the notice of rescission from CAUSE, and that's why they were deeming it ineffective. So in that regard, the facts of this case and the facts of AFS are very similar, in that you have a mistake made by a lender with respect to when they receive the notice of rescission, and a mistake by the lender that the notice of rescission wasn't effective because it was untimely in the loan funds. You're still dealing with the issue here that there were substantial loan proceeds from this transaction that went to pay off a prior encumbrance on the property. I believe that was in the amount of about $330,000. In addition, some of CAUSE's credit cards and taxes were paid, and I believe that he received about $8,000 cash from the transaction itself. So when we're looking at all of these factors, the question then is, did the district court abuse its discretion in modifying the rescission procedures? And the answer is no, because she found that CAUSE could not and did not have the ability to tender. So he would never prevail on a rescission claim because he could never give back what he received from the lender, unless, of course, the finance charges and fees. And then I also note, too, that was there for the court to consider, is that there was a prior district court action that BNC brought sometime in 2007, specifically seeking relief from the court relative to these same issues, trying to figure out and get some guidance from the court as far as some sort of adjudication with respect to the party's rights and the effect of the notice of rescission and what the parties are to do afterwards. So that one went by default judgment. CAUSE chose not to participate in those proceedings. So now here we are several years later, and there still hasn't been a payment on the loan. And the loan is definitely in default. It's been outstanding now since 2007. Oh, I see. He didn't want to go through with the deal. He had the right not to. Let me ask a variant of the question I asked Mr. Franzen. We're having all kinds of troubles with the audio today. If we were to agree with him, do you agree that what we should do is, assuming we agree with him, the next step in the procedure would be to order the case back to Judge Wynn, tell her to order the lien released, declare the lien released, and then make arrangements for Causey to pay back what he's supposed to pay back? Is that if we were to side with him? Well, I think that's effectively what you have in her ruling for motion for summary judgment, is that what she was saying is that, in a nutshell, even assuming that she ordered the bank to remove the lien first, Causey still couldn't tender. So I think we keep falling back to that same tender issue. So if this Court were to find and remand back to Judge Nguyen and said, Hey, remove the lien and figure out how much Causey owes the bank, then the question begins, how is Causey actually going to pay the bank? Well, that's the bank's problem for not honoring his decision when he made it. I mean, somebody's got to – someone's going to be in the soup here, and it should be probably the bank if it's the bank's error. I mean, this is not an ideal thing for the bank. I acknowledge that they're the authors of their own misfortune by doing it this way. Yeah, and if I just can clarify for the Court again, we're dealing with a loan that was transferred from initial lender to another lender. So when you're looking at U.S. Bank, U.S. Bank really didn't have knowledge. No, but you stand in their shoes, of course. He took the risk by buying that loan. And I understand that, too. But, you know, when you look at all of the equitable factors, you know, in effect what Causey would get is a free home. And we'd have, you know – And that isn't fair. It could have been prevented by the bank honoring the three-day decision in the first place, and that is the law. So, I mean, it's not a happy situation. The bank would obviously have other avenues with which to resort. The other way to look at it is he's forced to buy a home that he had every right to cancel. I'm sorry, I didn't get that. I'm saying he would get a free house out of this. I'm saying look at it the other way. If you prevail, he's required to go forward with a deal that he had every right to get out of. Okay. So I think the judge would have another question. I just want to tell her, just because I think he might be going back. It's Judge Wynn. Judge Wynn. Yeah, that's how you pronounce it. Okay, I think we're back to Mr. Franzen. Thank you. Fair enough. Thank you, Your Honors. I'll make my points brief, just in response. I'm hearing you, Counsel. I'm sorry, Your Honor. Is that better? No. We can barely hear Judge Fletcher, too. Your Honor, is that okay? Can you hear me now? Can you raise the mic at all? Judge Fletcher, he practically has it down his throat. There's something wrong with the. . . It's nothing to do with him. I know it's nothing to do with him, but I thought maybe the mic came up higher. I'm sorry, Judge Fletcher. This is. . . Okay. Is this okay? Yes. My point, Your Honors, my colleague raised the point that there was a collateral estoppel effect of a prior suit, and we touched on that in the brief. It's not before this Court. I want to stress that. We did cite a case that makes it clear that a default judgment would not be preclusive in this case. The other points that I want to make sure I make is there was mention about a revocation letter. This is also in the brief. For the record, it's found on Excerpts of the Record, page 220, is the letter of revocation, and Excerpts of the Record 196 is the deed of trust. And it's important to look at those two documents together because they're different loan numbers. What the record will show is that there was two loans in discussion. Mr. Clausey effectively agreed to proceed with a different loan, not the subject of this case. But the more important point is that the TILA, and it's in our brief as well, the Chapman case makes it clear that once a loan is rescinded, it cannot be revived. Even if the borrower wanted to, it's simply not available. So I want to make sure that point was clear. Another point is to be clear about the AFS case. In this instance, the loan was rescinded on May 22nd. It was received by the lender on May 23rd. It was then funded on May 26th. In the AFS case, the issue there was the lender funded the loan prior to receiving the notice, which, of course, then creates sort of a challenge as to how do we equitably return the status quo. But as the court identified earlier, that wasn't necessary in this instance. It was a closed loop and it was all done. The loan was canceled. So those are very distinguishing characteristics between the loans. With respect to the tender issue, I just want to be clear on this. Mr. Clausey, and the record reflects this as well, did, in fact, offer to tender. It's expressed. It's in the excerpts of the record. He offered to tender the statutory amount. The reason he didn't have an exact figure is because he didn't know the exact figure. There was numerous finance charges and closing costs that would need to be deducted. He had requested the bank to provide that. Instead, they responded with a payoff demand that included a prepayment penalty, fees, closing costs, etc., thereby rejecting his offer to tender. So the district court ruled that Mr. Clausey didn't presently have the ability to tender, which is a result of our famous real estate market, there's just no equity. But that's two years after the fact. At the time of his rescission demand, Mr. Clausey did say, let's work something out. I'll tender this statutory amount. He was rejected until approximately four months later when BNC then said, okay, we'll accept tender, and here's the payoff amount. Of course, by then he no longer was able to tender, again, due to the real estate market, no fault of his own. So I think those are important points just to respond to. Is he still in the house? Yes, Your Honor, he's still in the property. Does he want to stay in the house? He does. He likes the property, yeah. Is there some way we could be helpful in getting this resolved through mediation or otherwise? Well, Your Honor, I think there are challenges to that. We did explore many of those options. We've worked on this case extensively for some time now. But I just really think that there's a disagreement as to the rights of the parties that's standing in the way, and I'm hoping that this court can remedy at least a large part of that. Thank you. Ms. Harris, do you see any advantage in mediating it? I know that my office and Mr. Francis' office, we have had extensive conversations up through the time of this appellate hearing with regards to possibly settling the matter. Has anything changed as a result of this hearing? Nothing has changed. Our client has their ears open. I believe it's just a matter of what, you know. Would it be useful if we say, hey, let's defer submission for a week and give it back to us in a week and let us know if you've resolved it, or would that just be wasting time? Your Honor, I don't believe that would be sufficient or useful at this point. I really think it needs to be returned to the district court for further proceedings. Again, the tender issue, we mentioned it may be something to have a trial on. I want to make clear to the court, though, that we're not conceding that there should be an order that he tender the full amount of the loan at this point. So hopefully I made that clear during my argument. But as to any mediation efforts, we can do that and continue that, but I think it needs to be returned to district court at least at this point. Thank you very much, counsel. Both sides will stand at recess. All rise. Thank you. It sounded like somebody was talking on the phone or something. Yeah, it's our audio conductor. Hi, is the judge or is Dennis there in Seattle? Caleb, yes. Hey, Dennis. Hey, we had like a really bad failure of the echo canceling. I'm hoping before I connect in the roving room if you could power that system down and reboot it because all of a sudden we were getting like full echo back from the Seattle endpoint. Okay, let me reboot this side and connect it in two. What's that? I'll reboot this side, connect in two minutes. Yeah, judge, I'm going to have them restart the system because it's glitching real bad, and they're going to take about three minutes for them to restart it, and we'll try it again. All right, yeah, Dennis, I'll hang up with you now. Go ahead and restart the system, and I'll give you a call in three minutes. Very good. Just all of a sudden. You did good. Technical advice. The judge could have done it with his foot. Next time, just kick it with your foot, judge. It worked. I think you turned on the volume button. You just tapped it. Just tapped it. I don't even know what to say. It all initiated because she shuffled some papers and then started getting back to echoing, and then when she moved paper, it was fine. Because, again, what we get is that they're just going to get right from there. Yeah, I mean, it sounds to me like it's just the echo canceling software.  All right. All right. All right. All right. All right.
judges: Fletcher, Silverman, Wardlaw